IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 20-14201 |
| | : | |
| LARRY L. WISSER and | : | |
| CATHLEEN R. WISSER, | : | |
| Debtors | : | Chapter 12 |

**OBJECTION OF NORTHWEST BANK TO CONFIRMATION
OF DEBTORS' CHAPTER 12 PLAN OF REORGANIZATION**

COMES NOW, Northwest Bank, by and through its counsel, Charles N. Shurr, Jr., Esquire and Kozloff Stoudt, and hereby files its Objection to Confirmation of Debtors' Chapter 12 Plan of Reorganization and in support thereof, states as follows:

1. Northwest Bank, successor to Union Community Bank, is a Pennsylvania savings bank with an address of 100 Liberty Street, Warren, Pennsylvania 16365 ("Bank").

2. Larry L. Wisser and Cathleen R. Wisser are adult individuals with an address of 8149 Bausch Road, New Tripoli, Pennsylvania 18066 (individually and collectively, the "Debtors").

3. On October 22, 2020 the Debtors voluntarily filed this Chapter 12 bankruptcy proceeding.

4. On November 12, 2020 the Bank filed a secured Proof of Claim in the amount of $418,320.09 plus accrued interest, late charges, legal fees, and collection costs (Claim No. 1) ("Claim").

5. The Bank's Claim is secured by a first-lien mortgage on non-residential agricultural real estate located at 8281 Holbens Valley Road, 8284 Holbens Valley Road, and 8292 Creamery Road, New Tripoli, Pennsylvania 18066 (collectively, the "Real Estate").

6. According to the Debtors' Bankruptcy Schedule A/B, the Real Estate has a value of $1,000,000.00, which exceeds the amount of the Bank's Claim.

7. On January 15, 2021 the Debtors filed a Chapter 12 Plan of Reorganization ("Chapter 12 Plan") in which the Debtors seek to retain the Real Estate and pay the Bank's Claim over a 30-year term at an interest rate of 4.0% per annum.

8. The Bank objects to confirmation of the Chapter 12 Plan, as it does not comply with the applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) and cannot be confirmed under the "cramdown" provisions of 11 U.S.C. § 1225(a).

9. The Chapter 12 Plan does not comply with the provisions of 11 U.S.C. § 1225(a)(5), as the Bank has not accepted the plan and the plan does not provide with respect to each allowed secured claim that the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

10. The deferred cash payments proposed to be paid to the Bank over a 30-year term do not comply with Bankruptcy Code requirements.

11. Although debt secured by real estate may be amortized over an extended period, the length of time must be "appropriate under the circumstances" and a court should not "permit payment of a claim over a period exceeding the customary term for which loans secured by such property are made." 8 *Collier on Bankruptcy* ¶ 1225.03[4][b]. See In re Indreland, 77 B.R. 268 (D. Mont. 1987) (30-year term denied where evidence that such a term is not customary for that type of real estate loan).

12. The Real Estate securing the Bank's loan is not residential real estate, and the proposed 30-year amortization/term is not appropriate, as it exceeds the customary term for similar loans.

13. In this case, the Real Estate securing the Bank's loan is a commercial agricultural property containing barns and outbuildings that are subject to use, depreciation, and obsolescence, and the customary amortization period for such a loan is 15-20 years with a 5-year term.

14. In addition, the proposed interest rate of 4.0% does not adequately compensate the Bank for the risk of plan failure, does not reflect the prevailing interest rate for similar loans, and is inconsistent with the U.S. Supreme Court's decision in Till v. SCS Credit Corp., 541 U.S. 465 (2004).

15. Under Till, in the event of a "cramdown" a secured creditor is entitled to a premium over the prime rate in effect, depending on the circumstances of the case and the level of risk of plan failure. Id. at 479-480.

16. In determining the appropriate interest rate, a court should consider the current market rate for similar types of loans made in the region at the time of the effective date of the plan, giving consideration to the security for the loan and risk of default. In re Howe Farms LLC, 2014 Bankr. LEXIS 4385 (N.D.N.Y. Oct. 16, 2014).

17. Given the background of this matter, the Debtors' payment delinquency on the Bank loan for over 2 years, their multiple previous attempts to reorganize, and since the Debtors' reorganization plan essentially represents a new, restarted farming operation, the Bank believes and avers that there is a significant risk of plan default, and thus it is entitled to a risk premium of at least 3.0% to 4.0% over the current prime rate of 3.25%, resulting in an interest rate of 6.25%

to 7.25% per annum. (The interest rate on the Note was originally 7.25% per annum and is currently 7.0% per annum.)

18. Such a risk premium is consistent with the Till decision, which mentioned that "courts have generally approved adjustments of 1% to 3%" above the prime rate. Till at 480.

19. In addition, to prevent an interest rate windfall for either the Bank or the Debtors, the Bank debt should balloon and be paid-off in five (5) years. See 8 *Collier on Bankruptcy* ¶ 1225.03[4][c]. See also In re Schreiner, 2009 Bankr. LEXIS 821 (D. Neb. Mar. 30, 2009); In re Lockard, 234 B.R. 484 (W.D. Mo. 1999) (20-year amortization with 5-year balloon).

20. Furthermore, requiring payment of the Bank's Claim in five (5) years is consistent with the original maturity of the Note, which is June 2026. See 8 *Collier on Bankruptcy* ¶ 1225.03[4][b][i] (original term of the loan is a relevant consideration in determining repayment period). See also In re Lockard, 234 B.R. 484.

21. The Chapter 12 Plan does not comply with the provisions of 11 U.S.C. § 1225(a)(6), as the Chapter 12 Plan does not appear feasible.

22. In order for a Chapter 12 plan to be considered feasible, a debtor must provide "'reasonable assurance that the plan can be effectuated'" In re Ames, 973 F. 2d 849, 851 (10th Cir. 1992), *quoting* In re Hopwood, 124 B.R. 82, 86 (E.D. Mo. 1991), *cert. denied* 507 U.S. 912 (1993). Furthermore, a plan's "income projections must be based on concrete evidence and must not be speculative or conjectural." In re Novak, 102 B.R. 22, 24 (E.D.N.Y. 1989). A Chapter 12 plan cannot be based on a "visionary scheme" (In re Reitz, 79 B.R. 934, 938 (Kan. 1987)), but rather, a plan must be realistic and have a reasonable probability of success (In re Zurface, 95 B.R. 527 (S.D. Ohio 1989)).

23. In this case, the Chapter 12 Plan does not appear feasible as the Debtors' monthly income is not sufficient to pay their monthly expenses. According to Amended Exhibit B to Debtors' Chapter 12 Plan, the Debtors' average monthly income is $15,691.45, but according to Exhibit A to Debtors' Chapter 12 Plan, the Debtors' average monthly expenses are $18,935.00.

24. Furthermore, the Debtors' Chapter 12 Plan was not proposed in good faith, as required by 11 U.S.C. § 1225(a)(3).

25. According to the Debtors' Chapter 12 Plan, the Debtors are seeking to effectuate their "family legacy" and are allowing their sons, Jason Wisser and Justin Wisser, to "operate the majority of the income producing activities on the farm." However, the Debtors have not provided any information about their sons' education, training, background, or experience to allow creditors to evaluate their farm management capabilities. The Debtors' sons have no ownership interest in the Real Estate and are not personally obligated for repayment of the Bank debt.

26. The Chapter 12 Plan does not include any remedies in the event the Debtors default on the plan, address the payment of post-petition taxes, require ongoing insurance coverage, or provide for the submission of future financial information by the Debtors.

27. Based on the foregoing, the Debtors' Chapter 12 Plan was not proposed in good faith, does not comply with the applicable provisions of the Bankruptcy Code, and cannot be confirmed under 11 U.S.C. § 1225(a).

WHEREFORE, Northwest Bank respectfully requests this Honorable Court deny confirmation of the Debtors' proposed Chapter 12 Plan.

Respectfully submitted,

**KOZLOFF STOUDT**

Date: 2/4/21

By: _____
Charles N. Shurr, Jr., Esquire
2640 Westview Drive
Wyomissing, Pennsylvania 19610
610-670-2552
Attorneys for Northwest Bank