# Maryland and Virginia Milk Producers Coop. Assn., Inc.

06/18/2021

20-14201

***10,451 56 ***10,451 56

LARRY L. WISSER
8149 BAUSCH ROAD
NEW TRIPOLI PA 18066

## Direct Deposit Advice

JUN 29 2021
TIMOTHY McGRATH, CLERK

Direct Payment: XXXXXXXX9001

LARRY L. WISSER 32913-1

**May 2021 Final Payroll**

| | | YTD |
|---|---|---|
| FO 1 3.5% Uniform Price | 17.94 | |
| MdVa 3.5% Blend Price | 17.04 | |
| Your Gross Price at Test | 19.04 | |
| Pounds Delivered | 108,234 | 467,709 |
| Average Daily Pounds | 3,491 | |

**Pounds Delivered:**

| | | | | | |
|---|---|---|---|---|---|
| 1st | 9,966 | 11th | 0 | 21st | 0 |
| 2nd | 0 | 12th | 0 | 22nd | 9,915 |
| 3rd | 0 | 13th | 10,067 | 23rd | 0 |
| 4th | 9,848 | 14th | 0 | 24th | 0 |
| 5th | 0 | 15th | 0 | 25th | 9,612 |
| 6th | 0 | 16th | 9,898 | 26th | 0 |
| 7th | 10,151 | 17th | 0 | 27th | 0 |
| 8th | 0 | 18th | 0 | 28th | 9,612 |
| 9th | 0 | 19th | 10,000 | 29th | 0 |
| 10th | 10,118 | 20th | 0 | 30th | 0 |
| | | | | 31st | 9,047 |

| Premiums and Penalties: | Rate/CWT | Total Amt | YTD Amt |
|---|---|---|---|
| Quality Premium/Penalty | -0.4525 | -489.76 | -1,513.55 |
| Total Amount | | -489.76 | -1,513.55 |

| | | Pounds | Rate | Month | Year To Date |
|---|---|---|---|---|---|
| PPD @Loc | | 108,234 | -1.0200 | -1,103.99 | -2,609.97 |
| Butterfat | 4.29 | 4,643 | 1.9851 | 9,216.82 | 36,486.75 |
| Protein | 3.27 | 3,539 | 3.1307 | 11,079.55 | 46,577.36 |
| Other Solids | 5.72 | 6,191 | 0.4645 | 2,875.72 | 10,035.66 |
| Programs & Marketing | | | | -974.11 | -4,145.84 |
| Quality Premiums / Penalties | | | | -489.76 | -1,513.55 |
| Excess Lbs Over Adj Base | | 0 | -2.7500 | 0.00 | 0.00 |
| Net of Programs | | | -1.3525 | -1,463.87 | |
| Gross Value | | | | 20,604.23 | 84,830.41 |
| Less Advance | | | | 7,733.13 | 0 |
| Less Hauling | | | | 1,515.89 | 6,499.37 |
| Less Assignments | | | | 903.65 | 4,121.56 |
| **Net Earnings** | | | | 10,451.56 | 74,209.48 |

RPTS091MV

| | Assembly Charges | Destination Charges | Total Amount | Year To Date |
|---|---|---|---|---|
| TRANSPORTATION CHARGES | 383.76 | 1,132.13 | 1,515.89 | 6,499.37 |

| Assignee | Per CWT | Base Amt | Total Amount | Year To Date |
|---|---|---|---|---|
| 00001 NATIONAL DAIRY PROMO & RESEARC | 0.0500 | 54.12 | 54.12 | 233.86 |
| 00012 MARKETING EXPENSE | | 481.54 | 481.54 | 2,297.51 |
| 20803 ALLIED MILK PRODUCERS | 0.1000 | 108.23 | 108.23 | 467.71 |
| 30615 CWT | 0.0400 | 43.29 | 43.29 | 187.07 |
| 90034 CAPITAL RETAIN | 0.2000 | 216.47 | 216.47 | 935.41 |
| Total Amount | | | 903.65 | 4,121.56 |

This is all we got to spend

UNC Bank gave us 202,972.13

When we should have got 465,00.00

Bruce Brown took 255,00.00 What did Bruce do with it New Tripoli Bank said

if you would have got 465,00.00 [illegible] check & just get what you need, Watch

was 100,00,00 yet are project was 500,00.00

you would have all of This Mess

This is all Bruce Brown doing.

Bruce gave us 79,00,00 Just to

Spend, Bruce sat down at are table and wrote out 3900,00 in bills and gave me 4000,00 for cows. That's all we got And Bruce Brown was sopose to give us 2000,00 and only like I said 7900,00 The thing is UNC Bank + Bruce Brown never Came out to the Farm to sign papers or docketmentive when to records of deeds and we don't sign 465,00.00 2000,00 9000,00 or 3000,00 The only

S parate

one we sign was 150,00 Which Brown ripe out of 200,00,00 and made a Loan of 150,00,00 and 50,00,00 was left and made a 80,00 loan then he had 70,00,00 ef Bruce sit down at are table and wrote out 39, but when and spend / Millon Bruce took are Land presvattion and / quarter put it in Blue Ball and The BBT & Fulton Bank dollares Where is it now

Scrad money in Banks Fraud said he payed the milk tank, Took Robert Nolts Cow money and didn't have a lean on those Cows. Bruce ~~sp...~~ S parate money to make



This is all we Spend

There is Fraud, scran, sign are name, Sparate to made more Loans

There taking this Farm away from are 4 Boys & 8 grandchildren Stop this Sale

TFOSTER_2567256.jpg - Windows Picture and Fax Viewer

This is all Larry and I got out of 465, We have all the checks to This

DEPOSIT TICKET
TO BE USED FOR DEPOSIT TRANSACTIONS ONLY

CATHLEEN R. WISSER
LARRY L. WISSER
8149 BAUSCH ROAD
NEW TRIPOLI, PA 18066

DATE ____________

AmericanBank
Allentown, Pennsylvania
www.pcbanker.com 888-366-6622

☐ CASH
List
Checks
Singly
TOTAL ITEMS
SUB TOTAL
LESS CASH RECEIVED

BH: 2 278 CDD: 68 TH: 1767
Acct#: 1000396100 Post Date: 0[illegible]-2006
Timestamp: 0[illegible]-2006 $202,972.13
DEP Amt:202,972.13

⑆031302997⑆ 1000396100⑈

CHECKS AND OTHER ITEMS ARE RECEIVED FOR DEPOSIT SUBJECT TO THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE AND ANY APPLICABLE COLLECTION AGREEMENT.

This is all I got out of 465,00.0 Bruce got 253,00
200 + 200, 150, 150, 150 122, 615 Land presavations
39 commonwealth fours 39 citizens Bank 39 UNC Bank
39 Bruce doesn't come forward FOIA Lets Subpeona

start CORE Inbox Search Desktop

Citizens Bank

Commercial Account Statement

1 OF 1

1-800-862-6200

Call Citizens' PhoneBank anytime for account information, current rates and answers to your questions.

Beginning November 01, 2008 through November 30, 2008

US059 BR627 7 1

FARM SERVICE AGENCY
CATHLEEN R WISSER
1238 COUNTY WELFARE RD STE 240
LEESPORT PA 19533

RECEIVED DEC 0 8 2008 Berks County FSA

Bruce could sit down at my Table But what about 1 millon 126,00.00 write these checks

Commercial Checking

SUMMARY

FARM SERVICE AGENCY
CATHLEEN R WISSER
Municipal Checking
622126-808-0

Balance Calculation

| | |
|---|---|
| Previous Balance | 90,000.00 |
| Checks | 79,406.14 - |
| Debits | .00 - |
| Deposits & Credits | .00 + |
| Current Balance | 10,593.86 = |

Bruce sit at my table a wrote out 79, & had the checks But Evert Cook took them

Previous Balance 90,000.00

TRANSACTION DETAILS

Checks* There is a break in check sequence

| Check # | Amount | Date | Check # | Amount | Date |
|---|---|---|---|---|---|
| 1001 | 4,109.39 | 11/04 | 1007* | 5,192.84 | 11/04 |
| 1003* | 15,000.00 | 11/25 | 1008 | 3,814.07 | 11/03 |
| 1004 | 5,465.00 | 11/04 | 1009 | 40,000.00 | 11/26 |
| 1005 | 5,824.84 | 11/04 | | | |

feed; Bred; vet; manure hauling; cows; This one I got

These are the checks Bruce & Amy & Me sit down at my table and wrote out.

Total Checks 79,406.14

Current Balance 10,593.86

Daily Balance

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 11/03 | 86,185.93 | 11/25 | 50,593.86 | 11/26 | 10,593.86 |
| 11/04 | 65,593.86 | | | | |

NEWS FROM CITIZENS

--Give Help. Give Hope. Be Inspired. Please join us in saluting our new Champions in Action at citizensbank.com/community.

1500.0:00
4109.39
19109.39
3814.07
22923.46

5,465.00
5,824.84
5,192.84
15482.68

22,923.46
15,482.68
38,406.14 and the 40, when for cows
40,000.00
78,406.14

Bruce took 10, along at all of them up total 79,00.00

90,000.00
78,406.14
[illegible] 593.86 left

It did Bruce ... with TX

Loan 44-01 closed 11/10/2004 - $150,000 approved as follows:

- $14,000 to purchase cows
- $6,000 tractor repair
- $130,000 to refinance Blue Ball Bank

Bruce Spend

Fraud

The following advances were made via paper check payable to Cathleen R. Wisser:

- 11/1/2004 - $99,000
- 11/10/2004 - $50,999
- 11/19/2004 - $1

Bruce Spend

Loan 41-02 closed 8/8/2005 - $200,000 approved for construction of new dairy barn. Union National Bank financed purchase of milking parlor, remainder of barn construction and purchase of additional cows.

The following advances were made to a Union Nat'l supervised bank account:

- 9/15/2005 - $1
- 9/21/2005 - $248,880.43, funds from Union Nat'l Bank
- 10/28/2005 - $75,000
- 12/14/2005 - $50,000
- 1/24/2006 - $74,999

Loan 44-03 closed 12/21/2006 - $40,000 approved for 15 cows and additional heifers/cows

The following advances were sent to a Citizen's Bank supervised bank account:

- 12/26/2006 - $1
- 3/30/2007 - $39,999

Loan 44-04 was a result of restructuring 44-01 on 12/21/2006

Loan 41-05 was a result of restructuring 41-02 on 12/21/2006

Loan 44-06 closed on 10/29/2008 - $90,000 approved as follows:

- $60,000 to purchase 30 cows
- $30,000 to refinance debts

Bruce took the

The following advances were sent to a Citizen's Bank supervised bank account:

- 10/22/2008 - $90,000

Loan 44-07 closed 7/2/2010 - $30,000 to purchase 20 additional cows.

The following advances were sent to a Citizen's Bank supervised bank account:

- 7/3/2010 - $30,000

Loan 41-08 was a result of restructuring 41-05 on 7/2/2010

Loan 44-09 was a result of restructuring 44-03 on 7/2/2010

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| 44-06 | $ 90,000.00 | 3.7500 % | 10/29/2008 | CATHLEEN R WISSER<br>LARRY L. WISSER | 10/29/2015 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

This is all we got from Bruce Sat at are Table a wrote out 39 + gave me 20 and when out the door with 19,000.00 What did Bruce do with that

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

Initial LLW CRW Date 7/2/2016

United States Department of Agriculture

JUL 21 2016

Farm and Foreign Agricultural Services

Farm Service Agency

Berks County Farm Service Agency
1238 County Welfare Road
Leesport, PA 19533-9710

610-478-7158/Ext# 2
855-822-1791- Fax

7/19/2016

Jeffrey R. Boyd
Boyd & Karver, Attorneys and Counselors at Law
7 East Philadelphia Avenue
Boyertown, PA 19512

Dear Mr. Jeffery R. Boyd,

In response to your request, please see the attached summary and documentation of the loans and advancements made for Larry & Cathleen Wisser of 8149 Bausch Road, New Tripoli, PA.

If you have any questions, feel free to contact me at 610-478-7158, ext. 2.

Sincerely,

Bruce K. Brown
Farm Loan Manager

3

Fax Mike Coiles
616-903-4421

717 656 4397

Jarred Rohrer
717-519 3186
Loan off.

465,000.- 15yrs
NO DOCS Signed.
Weiser

7,275.00

Gro Mor Plant Food Co. Inc
281 Farmland Rd
Leola PA 17540

New phone number
717-606-7622

THIS IS THE ORIGINAL COPY JARRET SENT US HE WAS THE LOAN OFFICER FOR THE BANK

Now they want 418,00.00 for What?

Where's Warren County?

**UNION NATIONAL COMMUNITY BANK** No one from there came to the farm

# PROMISSORY NOTE

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Larry L Wisser, Cathleen R Wisser, 8149 Bausch Road, New Tripoli, PA 18066

Where the Bank Where Warren County so and Larry could sign

**Lender:** Union National Community Bank, HACC Gold Cafe, 1625 Old Philadelphia Pike, Lancaster, PA 17602

**Principal Amount:** $465,000.00 Nobody came out to the farm

**Date of Note:** June 1, 2006

**Maturity Date:** June 5, 2026

**PROMISE TO PAY.** Larry L Wisser and Cathleen R Wisser ("Borrower") jointly and severally promise to pay to Union National Community Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Sixty-five Thousand & 00/100 Dollars ($465,000.00), together with interest on the unpaid principal balance from June 1, 2006, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 60 monthly consecutive principal and interest payments in the initial amount of $3,708.32 each, beginning July 5, 2006, with interest calculated on the unpaid principal balances at an interest rate of 7.250% per annum; 179 monthly consecutive principal and interest payments in the initial amount of $4,128.18 each, beginning July 5, 2011, with interest calculated on the unpaid principal balances at an interest rate based on the Wall Street Journal Prime Rate (currently 8.000%), plus a margin of 1.000 percentage points, resulting in an initial interest rate of 9.000%; and one principal and interest payment of $4,124.06 on June 5, 2026, with interest calculated on the unpaid principal balances at an interest rate based on the Wall Street Journal Prime Rate (currently 8.000%), plus a margin of 1.000 percentage points, resulting in an initial interest rate of 9.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month, on the first day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.000% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.750% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: The Borrowers shall be permitted to prepay the loan at any time without penalty, provided funds used for such prepayments are not obtained from a lending institution. Except for the aforementioned, prepayments will be subject to a penalty equal to 5.00% of the amount prepaid during the first year; 4.00% of the amount prepaid during the second year; 3.00% of the amount prepaid during the third; 2.00% of the amount prepaid during the fourth year; and 1.00% of the amount paid during the fifth year. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Union National Community Bank, Credit Services Division, P.O. Box 627 Mount Joy, PA 17552-0627.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum ("Default Rate"). If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

JMM T A of Lancaster was sended payments to UNC Bank out of 255,00,00 1,480,00 every month started Nov 2004 Dec, DST US

Who Gave the 465 We don't sign no dockment Who Came to the Farm

Parcel Identification Number: 5428715993141

RECORDATION REQUESTED BY:
Union National Community Bank
HACC Gold Cafe
1625 Old Philadelphia Pike
Lancaster, PA 17602

WHEN RECORDED MAIL TO:
Union National Community Bank
570 Lauck Lane
Lancaster, PA 1760

No one from here

MAIL
T.A. OF LANCASTER
329 A MAIN ST.
LANDISVILLE, PA 17538
ph# 717-892-2792

1ST 179 - 3075

FOR RECORDER'S USE ONLY

Nobody came out to the farm so we could sign this

## MORTGAGE

Amount Secured Hereby: $465,000.00 Where's the office

THIS MORTGAGE dated June 1, 2006, is made and executed between Larry L Wisser and Cathleen R Wisser, whose address is 8149 Bausch Road, New Tripoli, PA 18066 (referred to below as "Grantor") and Union National Community Bank, whose address is 1625 Old Philadelphia Pike, Lancaster, PA 17602 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Lehigh County, Commonwealth of Pennsylvania:

See Exhibit "A" , which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 8281 Holbens Valley Road, New Tripoli, PA 18066. The Real Property parcel identification number is 5428715993141.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $465,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

This Document Recorded 07/05/2006 12:57PM Doc Code: MTG
Doc Id: 7351866 Receipt #: 254423 Rec Fee: 57.00
Lehigh County, PA Recorder of Deeds Office

7351866 Page: 1 of 12 07/05/2006 12:57PM



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $465,000.00 | 06-01-2006 | 06-05-2026 | | | | 389 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Larry L Wisser
Cathleen R Wisser
8149 Bausch Road
New Tripoli, PA 18066

**Lender:** Union National Community Bank
HACO Gold Cafe
1625 Old Philadelphia Pike
Lancaster, PA 17602

**Principal Amount: $465,000.00**

**Date of Note: June 1, 2006**

Maturity Date: June 5, 2026

**PROMISE TO PAY.** Larry L Wisser and Cathleen R Wisser ("Borrower") jointly and severally promise to pay to Union National Community Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Sixty-five Thousand & 00/100 Dollars ($465,000.00), together with interest on the unpaid principal balance from June 1, 2006, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 60 monthly consecutive principal and interest payments in the initial amount of $3,708.32 each, beginning July 5, 2006, with interest calculated on the unpaid principal balances at an interest rate of 7.250% per annum; 179 monthly consecutive principal and interest payments in the initial amount of $4,125.18 each, beginning July 5, 2011, with interest calculated on the unpaid principal balances at an interest rate based on the Wall Street Journal Prime Rate (currently 8.000%), plus a margin of 1.000 percentage points, resulting in an initial interest rate of 9.000%; and one principal and interest payment of $4,124.08 on June 5, 2026, with interest calculated on the unpaid principal balances at an interest rate based on the Wall Street Journal Prime Rate (currently 8.000%), plus a margin of 1.000 percentage points, resulting in an initial interest rate of 9.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month, on the first day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.000% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.750% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: The Borrowers shall be permitted to prepay the loan at any time without penalty, provided funds used for such prepayments are not obtained from a lending institution. Except for the aforementioned, prepayments will be subject to a penalty equal to 5.00% of the amount prepaid during the first year; 4.00% of the amount prepaid during the second year; 3.00% of the amount prepaid during the third; 2.00% of the amount prepaid during the fourth year; and 1.00% of the amount paid during the fifth year. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Union National Community Bank, Credit Services Division, P.O. Box 627 Mount Joy, PA 17552-0627.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum ("Default Rate"). If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | | | Officer | Initials |
|---|---|---|---|---|---|---|
| $424,548.96 | 08-01-2006 | 06-20-2026 | | | 933 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Larry L Wisser
Cathleen R Wisser
8149 Bausch Road
New Tripoli, PA 18066-3614

**Lender:** Union National Community Bank
HACC Gold Cafe
1625 Old Philadelphia Pike
Lancaster, PA 17602

**Principal Amount: $424,548.96**

**Date of Agreement: August 5, 2010**
Maturity Date: June 20, 2026

DESCRIPTION OF EXISTING INDEBTEDNESS. An Agricultural Term Loan dated June 1, 2006 in the original amount of $465,000.00 with sixty (60) monthly principal and interest payments based on a fixed rate of 7.25% followed by one hundred eighty (180) monthly principal and interest payments based on a variable rate of Wall Street Journal Prime plus 1.00% and a floor of 6.75% with a scheduled maturity date of June 20, 2026. A six (6) month interest only period was added with a Change in Terms Agreement dated July 30, 2009.

DESCRIPTION OF COLLATERAL. The loan shall continue to be secured by a 1st position mortgage dated June 1, 2006 and recorded July 5, 2006, DOC ID #7351866 against property located 8281 Holbens Valley Road, New Tripoli, Weisenberg Township, Lehigh County, PA from Larry L and Cathleen R Wisser to Lender.

DESCRIPTION OF CHANGE IN TERMS. There will be three (3) months interest only payments followed by thirty three (33) monthly principal and interest payments at a fixed interest rate of 7.00% followed by one hundred fifty five (155) principal and interest payments at a variable interest rate of Wall Street Journal Prime Rate plus 1.50% with a floor of 7.00%.

PAYMENT. Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 3 monthly consecutive interest payments, beginning August 20, 2010, with interest calculated on the unpaid principal balances using an interest rate of 7.000% per annum based on a year of 360 days; 33 monthly consecutive principal and interest payments in the initial amount of $3,708.32 each, beginning November 20, 2010, with interest calculated on the unpaid principal balances using an interest rate of 7.000% per annum based on a year of 360 days; 154 monthly consecutive principal and interest payments in the initial amount of $3,763.57 each, beginning August 20, 2013, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.000% per annum based on a year of 360 days; and one principal and interest payment of $3,762.61 on June 20, 2026, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 7.000% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X (Seal)

X (Seal)

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | | Call / Coll | | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $424,548.96 | 06-01-2006 | 06-20-2026 | | 3500 / 90 | | 987 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Larry L Wisser
Cathleen R Wisser
8149 Bausch Road
New Tripoli, PA 18066-3614

**Lender:** Union National Community Bank
HACC Gold Cafe
1625 Old Philadelphia Pike
Lancaster, PA 17602

**Principal Amount: $424,548.96**

**Date of Agreement: August 5, 2010**

Maturity Date: June 20, 2026

DESCRIPTION OF EXISTING INDEBTEDNESS. An Agricultural Term Loan dated June 1, 2006 in the original amount of $465,000.00 with sixty (60) monthly principal and interest payments based on a fixed rate of 7.25% followed by one hundred eighty (180) monthly principal and interest payments based on a variable rate of Wall Street Journal Prime plus 1.00% and a floor of 6.75% with a scheduled maturity date of June 20, 2026. A six (6) month interest only period was added with a Change in Terms Agreement dated July 30, 2009.

DESCRIPTION OF COLLATERAL. The loan shall continue to be secured by a 1st position mortgage dated June 1, 2006 and recorded July 5, 2006, DOC ID #7351866 against property located 8261 Holbens Valley Road, New Tripoli, Weisenberg Township, Lehigh County, PA from Larry L and Cathleen R Wisser to Lender.

DESCRIPTION OF CHANGE IN TERMS. There will be three (3) months interest only payments followed by thirty three (33) monthly principal and interest payments at a fixed interest rate of 7.00% followed by one hundred fifty five (155) principal and interest payments at a variable interest rate of Wall Street Journal Prime Rate plus 1.50% with a floor of 7.00%.

PAYMENT. Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 3 monthly consecutive interest payments, beginning August 20, 2010, with interest calculated on the unpaid principal balances using an interest rate of 7.000% per annum based on a year of 360 days; 33 monthly consecutive principal and interest payments in the initial amount of $3,708.32 each, beginning November 20, 2010, with interest calculated on the unpaid principal balances using an interest rate of 7.000% per annum based on a year of 360 days; 154 monthly consecutive principal and interest payments in the initial amount of $3,763.57 each, beginning August 20, 2013, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.000% per annum based on a year of 360 days; and one principal and interest payment of $3,762.61 on June 20, 2026, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 3.250%), plus a margin of 1.500 percentage points, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 7.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 7.000% per annum or more than (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X ______________________ (Seal) X ______________________ (Seal)

# PROMISSORY NOTE
## (Continued)

Lender demanding cure of such default: (1) cures the default within sixteen (16) days; or (2) if the cure requires more than sixteen (16) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by a first position Real Estate Collateral Mortgage dated June 1, 2006 and recorded against property located at 8281 Holbens Valley Road, New Tripoli, Weisenberg Township, Lehigh County, PA from Larry L. and Cathleen R. Wisser to Lender.

**PROPERTY INSURANCE.** Borrower understands that Borrower is required to obtain insurance for the collateral securing this Note. Further information concerning this requirement is set forth in the Mortgage and in the Agreement to Provide Insurance, all the terms and conditions of which are hereby incorporated and made a part of this Note.

**INCORPORATION OF OTHER DOCUMENTS.** All the terms, covenants and conditions contained in the Mortgage and in an any other agreement, including a construction loan agreement, or document securing or executed in connection with the indebtedness evidenced hereby (such other agreement or document being hereinafter collectively called "Collateral"), are incorprated herein by reference and are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein. If Maker fails to keep, observe and perform any of the terms, covenants and conditions contained in this Note, the Mortgage or in the Collateral in accordance with the terms and provisions thereof, Bank may, in its discretion, but without any obligation or duty to so do and without waiving any default, perform any of such terms, covenants and conditions, in part or in whole, and any money advanced or expended by Bank in or toward the fulfillment of such terms, covenants and conditions, shall be due on demand and become a part of and added to the indebtedness due under this Note and secured by the Mortgage and other Collateral with interest thereon at the same rate as the principal of this Note, from the date of the respective advance or expenditure.

**ADDITIONAL OBLIGATIONS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender: (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender, (4) incur any obligation as surety or guarantor other than in the ordinary course of business.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

X ______________________ (Seal)
Larry L Wisser

X ______________________ (Seal)
Cathleen R Wisser

LASER PRO Lending, Ver. 5.31.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - PA [illegible]

Mike

This Is Jim Bachman

Where is

What is

~~Loan~~ Loan payment

of $256,416.14

taken out of settlement

June 2, 2006

What happened / who got loan proceeds of $255,000. USDA on 08.08-05

this spended

Loan # 00031051378

Show documents

restricted account?

who signed checks?

**JAMES CLARK**
ATTORNEY AT LAW

277 MILLWOOD ROAD
LANCASTER, PA 17603

(717) 464-4300
FAX (717) 464-0195

September 14, 2005

Larry L. and Cathleen R. Wisser
8149 Bausch Road
New Tripolin PA 18066

Quarryville, PA 17566

Re: Mortgages - Union National Community Bank and Farm Service Agency

Dear Mr. and Mrs. Wisser:

Enclosed please find a copy of the Mortgage in the amount of $200,000.00 with Farm Service Agency which was recorded in the Recorder of Deeds Office in and for Lehigh County on September 1, 2005. The original mortgage has been forwarded to Farm Service Agency. Also enclosed please find a copy of the Mortgage in the amount of $255,000.00 with Union National Community Bank which was also recorded on September 1, 2005. The original mortgage has been forwarded to Union National. We are retaining copies of the Mortgages in our file.

If you have any questions, please do not hesitate to call me.

Sincerely,

By: Hope S Glidden

Hope S. Glidden
Real Estate Paralegal

255000 ← ADVANCE
This is what Malcolm Smith said
610 375-6330 phone
Fax 610-375-6367
~~Fax Call~~ comment

FIM

JMM

TLS

LJS

Prepared By:

MAIL Union National Community Bank
101 East Main Street
Mount Joy, PA 17552
717-492-2222

This is all Li

Look at the date's on this paperwork

Doesn't hold out.

When Recorded, Mail To:
Union National Community Bank
P.O. Box 627
Mount Joy, PA 17552

UPI #

For Recorder's Use Only

This date doesn't hold out.

**SATISFACTION PIECE**

Made this 27th of June, 2006

Name/s of MORTGAGOR/S: Larry L. Wisser and Cathleen R. Wisser 31051378-1

Name/s of MORTGAGEE/S: Union National Community Bank

DATE of Mortgage: August 8, 2005 Original MORTGAGE DEBT: $ 255,000.00

Mortgage RECORDED on September 1, 2005, in the Office of the Recorder of Deeds of Lehigh County, Pennsylvania, Doc Id: 7288351

Name/s of LAST ASSIGNEE/S:

Last ASSIGNMENT RECORDED on ______________, 19___ in the aforementioned Office of the Recorder of Deeds in Mortgage Book, ____________, Page ____________.

Brief DESCRIPTION or Statement of LOCATION of Mortgage Premises:
Weisenberg Township, Lehigh County
8281 Holbens Valley Road, New Tripoli

The undersigned hereby certify that the debt secured by the above-mentioned Mortgage has been fully paid or otherwise discharged and that upon the recording hereof said Mortgage shall be and is hereby fully and forever satisfied and discharged.

IN WITNESS WHEREOF the undersigned executed this Satisfaction Piece on the 27th of June A.D. 2006.

UNION NATIONAL COMMUNITY BANK

BY: [signature] (SEAL)
Ann S. Reinhold, Attorney-in-fact

WITNESS PRESENT:

[signature] (SEAL
Barbara E. Pyott

This Document Recorded
10/30/2006
03:42PM
Doc Code: SATP

Lehigh County, PA Recorder of Deeds Office

Doc Id: 7376893
Receipt #: 271393
Rec Fee: 30.50

7376893
Page: 1 of 2
10/30/2006 03:42PM

Cathleen R. Wisser
8149 Brunsch Rd.
New Tripoli, PA 18066
610-298-2987
cell 484-223-8040
d.o.b. 8/28/56

Jim Bachman
8095 Brunsch Rd.
N.T.
610-298-2277
C 484-221-2133
3/29/56

Problem: Credit assistance to avoid foreclosure

First area: 9/2005 When started to manage small family dairy farm. Farm at 8281 Holbeds Valley Rd., N.T. — 1 mi. down rd.

Loans: disputing some of loan balances. Bruce Brown is loan officer. Paperwork confusing.

Chief Farm Loan Officer for D.O.A. - Community Bank

Union National, foreclosing + Bruce pushing it.

He's farm loan manager for the Dept. of Agriculture

Action in Foreclosure: Union Community Bank vs. Larry L. Wisser + Cathleen R. Wisser
No. 2016 C 2244 Lehigh Co.

Union Comm.
Citizen's
Fulton Bank
Thompson Bank

Brown has an account at these banks under the Farm Service Agency with Cathleen R. Wisser as the account holder.

Mike Giles, Esq. - Wyomissing.
got [illegible] - satisfied two judgments of three

Brown - he satisfied $150,000 w/ Susquehanna Bank when only $20,000 owed.
1989 $95,000 15 yr. loan to buy off barn. Where did $ come from.
She thinks Brown embezzled it

Scott Hausman of Susquehanna Bank got $150,000 on 11/16/04 for Meridian that went to Susquehanna which (2/25/91) had original $95,000 loan that was paid down for 15 yrs to 20,000 or so - slowest paid off.

Loans to Blue Ball unexplained: Bruce Brown [illegible]
balance 9/14/04 $ 99,561.89
19,171.45
14,369.50

11/29/04 paid by check the amount of $122,615.00

deferred notes 15 months ahead from today.

– Fedal Esquire Robert & John Goldman

Union National 9/21/05

Total Deposits of checks totalling $492,621.43

On 6-1-2006 took out $465,000.00 loan w/ Union National

from this $202,972.13 went into TA of Lancaster Escrow account at Union National for File No. to Larry + Cathleen who deposited it in American Bank (Jarrell) golf checking acct.

balance as of 6-5-2006 was 201,837.00

FSA – The Farm Service Agency is an agency of the Dept of agriculture. They are supposed to shop around for bank loans for farmers and after the loan is secured from some bank, supervise the bank account.

Mike Giles – [illegible] planned foreclosure (Wyomissing)
George Luty – bankruptcy (Allentown + Wyomissing)
Jeff Boyd = gen atty (refused to Giles) Boyertown
610-367-2148



Payed off Sunnyside Dairy Loan 6,972.64

This are to do with
USDA
Bruce Brown
Deposit

Ran off with are money Kevin at the farm made you sign at the farm

Bruce Brown got this Check from Union Bank and don't tell us what we were sign

248,880.43
199,999.00 - Loan #2
40,000.00 Loan #3

Bruce Brown Took Three Loans to make This

488,879.43
+ 3,742.00 - check not cashed
492,621.43 - total Deposit

checks total $492621.43

TR:58 1-1 09/21/05 11:20 AM
XXXX8026 Ck Deposit $248,880.43
Ask us how to pay your bills online.

John Fedal Esquire

LAW OFFICE OF
**ROBERT E. GOLDMAN LLC**
THE CAPRI BUILDING
535 HAMILTON STREET, SUITE 302
ALLENTOWN, PA 18101

ROBERT E. GOLDMAN
ADMITTED IN PA, NJ & FL

TEL 610-841-3876
CELL 267-261-5282
FAX 215-933-6902
reg@bobgoldmanlaw.com
www.bobgoldmanlaw.com

OFFICES
68 E. COURT STREET
DOYLESTOWN, PA 18901

January 25, 2017

Sent Via U.S. Priority Mail
Cathleen Wisser
8149 Bausch Road
New Tripoli, PA 18066

Re: Client File

Dear Cathleen:

As you know, we have expended a significant amount of time trying to put some order to the documents which detail the growing financial difficulties associated with your farming operation. The purpose of our efforts was to enable us to determine whether we are able to provide you with legal assistance beyond that which other attorneys have been reportedly, unsatisfactorily providing you over the past several years.

Unfortunately, following that review, we believe that while we do have the expertise which would be of assistance to you, it has become apparent that our schedule would not permit the expenditure of time your case obviously requires and deserves.

Accordingly, we are returning to you the file documents which you have presented for our review.

We are pleased to advise you that there will be no charge to you for the hours spent in our review and reorganization of these documents.

And finally, for your records, the bankruptcy lawyer we mentioned to you early on, should you need his assistance is Charles Laputka, and may be reached at (610) 477 – 0155.

It was a pleasure to make your acquaintance. Please continue to pursue what we believe to be a just, if not complex, cause which, under different circumstances, we would have been honored to undertake.

Respectfully,

Robert E. Goldman, Esquire

Enclosure: file

cc: Charles Laputka, Esquire

Tcke Title Search says this is another way and the record of Deeds 79,08 USDA [illegible] 007 [illegible] but only UNCB 202,972.00

## WISSER PROPERTY TITLE SEARCH SUMMARY

We received and reviewed the title search for the Wisser property in Lehigh County. Following is the summary:

1. The property is owned by Larry L. and Cathleen R. Wisser by deed filed at Deed Book 1465, page 1087. The Deed covers all 3 parcels.

2. There are five mortgages on the property as follows:

Bruce is Clamit. We only sign one with Ruth Miller

a. United States of America, through the Farm Service Agency, USDA, in Berks County - $150,000.00 dated 11/10/04, filed 12/23/04, at instrument No. 7235752.

dockments Not 2004 never sign. never sign

b. United States of America, through the Farm Service Agency, USDA, in Berks County - $200,000.00 dated 8/8/05, filed 9/1/05, at instrument No. 7288352.

Don't even started the project of New Barn 2005 docments

c. Union National Community Bank - $465,000.00 dated 6/1/06, filed 7/5/06, at instrument No. 7351866.

Never Sign dockment

d. United States of America, through the Farm Service Agency, USDA - $90,000.00 dated 10/29/08, filed 10/31/08, at instrument No. 7504476.

Never sign dockments

e. United States of America, through the Farm Service Agency, USDA, in Berks County - $30,000.00 dated 7/2/10, filed 7/22/10, at instrument No. 2010023284.

Never Sign dockment

3. The property is enrolled in Clean and Green and is enrolled in an Ag Security Area.

4. There is an Agricultural Conservation Easement to the County of Lehigh in Perpetuity that was dated 5/18/99, filed at Misc. Book 925, Page 74 (copy attached). As was done with Bleiler, you will need to talk to the Lehigh County Ag Preservation Board to have WHM's work added to the Plan through an Amendment to the Conservation Plan.

5. There is a Tax Claim filed by the Northwestern Lehigh School District in the amount of $4,412.97 for non-payment of 2014/15 school taxes on the property at 8281 Holbens Valley Road.

6. There is a judgment in the amount of $98,082.00 filed against the Wisser's in regard to a mortgage on another property, filed 10/9/15.

7. There is another judgment in the amount of $8,317 filed against the Wisser's in regard to a District Justice action filed against them by Penn Jersey Products, Inc.

8. There are 9 different Easements given to Metropolitan Edison Company. It is impossible to tell where the easements are located. As always, make sure you know where all the line are located.

8281 Holbens Vall - 81.4 AC — Tax: 5428715993141
8284 Holbens Vall - 7 AC — 5428614222-1
8149 Bush Rd 15.5 AC — 54286076057-1

searched to: 1/13/16 12/15

Herman L. Wisser, widower

→

Larry L. and Cathleen R. Wisser h/w

DBV: 1465/1087

d/d 2/25/91
d/a 2/25/91
d/e 2/25/91
c 91.w

desc: 70 AC, 130 P. less + except 2 AC
20 AC, 62.9 P.
8 AC
3 AC, 120 P.

wav. Spec.
> copy deed 636/678

2: 1443/1053

search 2/25/91 = present

(1040) Larry L. Wisser
(340) Cathleen R. Wisser

Blu. Is. J. FT. RL

2009022877 Mt Ed R/W
D 1645/1047 Act 575 Cov
1868/200 Agri Security Area Agt
1925/74 Ag. Cons easement
1601 6/447 Verizon North R/W
745 6117 Act 319 Covenant
2009022875 Mt Ed R/W

Mtg 2010023284 USA Farm Service Agency 30,000 dat. 7/2/10 ent. 7/22/10

7504476 USA Farm Service Agency 90,000 dat. 10/29/08 ent. 10/31/08

J 2010023285 USDA Farm Service Agency S.T. ent. 7/22/10 None

MS 7235752 USA Farm Service Agency 150,000 dat. 11/10/04 ent. 12/23/04 — sub to Unsat.

2013017306 Granville N.A. F.T.

7288352 USA Farm Service Agency 200,000 dat 8/5/05 ent. 9/1/05 — sub to Unsat.

2015024528 USDA Farm Service Agency S.T. ent. 8/19/15 F.J.

735 1866 Union National

Searched to: 1/13/16

Summary

Premises: 8281 Holbens Valley Rd Parcel #542871599314-1 81.4 Acres
8284 Holbens Valley Rd. #54286142222-1 7 Acres
8149 Baush Rd. #542860760517-1 15.5 Acres
Weisenberg Twshp, Lehigh County

Current Owner: Larry L. and Cathleen A. Wisser h/w by
DBV. 1465/1087 (1991) (4 parcels in deed = 3 tax parcels above).

I. Mortgages and Liens:

(1) 1. #7235752 USA, by Farm Service Agency $150,000 dated 11/10/04, entered 12/23/04, subordinated at #7351867 to mortgage #3 below. $150,000

(2) 2. #7288352 USA, by Farm Service Agency $200,000 dated 8/8/05 entered 9/1/05, subordinated at #7351867 to mortgage #3 below.

(3) 3. #7351866 Union National Community Bank $465,000 dated 6/1/06 entered 7/5/06. it should be 80,000

(4) 4. #7504476 USDA, by Farm Service Agency $90,000 dated 10/29/08 entered 10/31/08. Bruce is not saying There is no 40,000

UCC 5. #2010023285 USDA, Farm Service Agency, Secured Transaction, equipment, entered 7/22/10.

(5) 6. #2010023284, USA, Farm Service Agency $30,000 dated 7/2/10 entered 7/22/10.

UnionNational
COMMUNITY BANK

paga

Last statement: September 22, 2005
This statement: September 27, 2005
Total days in statement period: 6

Page 1 of 1
10018026

CATHLEEN R WISSER
LARRY L WISSER
8149 BAUSCH RD
NEW TRIPOLI PA 18066

Direct inquiries to:
717 492-2222

Union National Community Bank
PO Box 0567
Mount Joy PA 17552-0567

Free Checking

| | | | |
|---|---|---|---|
| Account number | 0010018026 | Beginning balance | $0.00 |
| Low balance | $248,880.43 | Total additions | 248,880.43 |
| Average balance | $248,880.43 | Total subtractions | .00 |
| Avg collected balance | $213,326.00 | Ending balance $ | 248,880.43 |

CREDITS

| Date | Description | Additions |
|---|---|---|
| 09-21 | Deposit | 248,880.43 |

DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 09-21 | 248,880.43 | | | | |

DEC/18/2015/FRI 02:09 PM New Tripoli Bank FAX No. 610-298-3197 P. 016

DEPOSIT TICKET

Kathleen K Glover
Larry K Glover

DATE 9/21/15

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

SIGN HERE FOR CASH RECEIVED IF REQUIRED

UnionNational COMMUNITY BANK

CASH

60-938/313

SUB TOTAL

LESS CASH RECEIVED

DEPOSITOR'S COPY

$ 248880 43

⑆031309068⑆ ⑈1001⑈802⑈6⑈

We never saw or signed this check and put in a free checking account controlled by (USDA) and never spent it. this was the first time we saw this check

UnionNational COMMUNITY BANK

mail man said this —

RECEIVED
DEC 0 7 2007
Berks County FSA
Bruce Brown

Last statement: November 28, 2007
This statement: December 05, 2007
Total days in statement period: 8

This account is closed

CATHLEEN R WISSER
LARRY L WISSER
USDA FARM SERVICE AGENCY
1238 COUNTY WELFARE RD SUITE 240
LEESPORT PA 19533-9710

These are your copies of the statements

...unity Bank

-0567

Union National Gift Cards ... s!
Purchase one today and be ent... ... to win
a 4-Day Carnival Cruise plus Roundtrip Airfare.
Visit one of our 9 offices or www.uncb.com for more details.

** Closed Account - Final Statement **

page 6

Free Checking W/ No ATM Fees Gave to Sunnyside Dairy

Mike

| | | | |
|---|---|---|---|
| Account number | 0010018026 | Beginning balance | ~~$6,972.64~~ |
| Low balance | $0.00 | Total additions | .00 |
| Average balance | $871.58 | Total subtractions | 6,972.64 |
| Avg collected balance | $871.00 | Ending balance | $.00 |

2,488.0

Should the amount to add to the

CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 554 | 11-29 | 6,972.64 | | | |

DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 11-27 | 6,972.64 | 11-29 | 0.00 | | |

OVERDRAFT/RETURN ITEM FEES

| | |
|---|---|
| Return item fees for this statement period | $0.00 |
| Return item fees for this calendar year | $0.00 |
| Overdraft fees for this statement period | $0.00 |
| Overdraft fees for this calendar year | $0.00 |

this $ was in checking acct for sev months — Sunny[illegible]side Page 2 go together

**UN NAT L[illegible]**

Acc't No. -00010018026

| Posting Date | Transaction Descriptio | Principal | Int Rate | Interest | Late Fees/ Others | Escrow | Insurance | Due Date |
|---|---|---|---|---|---|---|---|---|
| 10/28/2007 | Loan | 6972.84 | | | | | | |
| 11/27/2007 | | | | | | | | |
| 11/29/2007 | Payment | 6972.64 | | | | ? Loan Pd in Full | What Loan? | |

he paid Sunnysides loan off with our money left in this pondage?

Jenny asking what loan, where did it come from?

# FAX COVER SHEET

| | |
|---|---|
| TO | Cathleen Wisser |
| COMPANY | |
| FAX NUMBER | 16107563483 |
| FROM | MICHAEL P GILES |
| DATE | 2018-06-11 17:02:17 GMT |
| RE | USDA loans |

## COVER MESSAGE

Attached is the list of USDA loans, as I see them, based on the documents you have sent to me to date. It looks like there were five (5) original loans ($150,000 on 11/10/04, $200,000 8/5/05, $40,000 on 12/21/06, $90,000 on 10/29/08 and $30,000 on 7/2/10) and the other eleven (11) loans were to refinance. If that is the case, then it is quite possible you did not receive any actual "cash" when some of these "refinance" loans were made. Let me know if you have any questions.

LAW OFFICE OF MICHAEL P. GILES, ESQUIRE
P.O. Box 6202
Wyomissing, PA 19610-6202
Direct Line: 610.373.1135 Fax: 610.903.4421
Email: mpglawyer@msn.com

USDA

FORGIVNESS?

Walter Aicher

restructuring

1 became 4, became 10, became (15)
2 became 5, " 7, became (13)
3 became 9, became (14)
4 became 10, became (16)
5 became 8, became (13)
6 became 11, became (16)

history

7 became (12)
8 became (13)
9 became (14)
10 became (15)
11 became (16)

These are outstanding promissory notes

Mike Do we just owe

| | | original note amt | restructured amt | 12-31-15 balance |
|---|---|---|---|---|
| 1.25% | 12 | $23,774.94 | 30,000.00 | p+ 1100.82 |
| 3.375% | 13 | 203,357.96 | 204,824.24 | |
| 1.25% | 14 | 34,545.09 | 37,643.18 | p+ 1599.49 |
| 1.25% | 15 | 121,641.61 | 132,512.81 | |
| 1.25% | 16 | 80,000.37 | 87,148.48 | * |

USDA Bruce is asking for $501,00.00 from the boys

New Loan for What

Loans deferred until 4.18.2018
#12
#13
#14
#15

#16 371.00 / month started

* 79 067.13
3506.41
82573 54

restructuring

1 became 4, became 10, became (15)
2 became 5, " 8, became (13)
3 became 9, became (14)
4 became 10, became (15)
5 became 8, became (13)
6 became 11, became (16)

history

7 became (12)
8 became (13)
9 became (14)
10 became (15)
11 became (16)

These are outstanding promissory notes

| | original note amt | restructured amt | balance |
|---|---|---|---|
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |



Brown's notes

Which Bank

Where did he get 150, from

ENTERED NOV 0 8 200

- $150,000.00 loan was obligated 10/25/04
- Received $84.00 from App on 10-29-04 and filed UCC with Dept of State
- Received Faxed filed UCC from Dept of State on 11/5/04
- Ordered 1st loan check of $99,000.00 on 10/28/04 @ FLM-Brown — for what
- Ordered 2nd loan check of $51,000.00 11/4/04 but would not allow this amount, So did another 1C for $50,999.00 @ FLM-Brown — for what
- Updated MAC with UCC info —

Why were

TLC to "A" ? schedule Loan closing

3100 today at Prms

Elu ? prepare loan closing Documents

1. P. note

44-01 $150,000 for 7 yrs with 15 yr Amortization ($3.875%)-3.7/8% (89.16) $13,374.00

2. mile ass-mnt ($1,115.00)

3. mrtg. to Lehigh county also need to know filing Fee

?

ENTERED NOV 0 8 BOOK



What about
Citizens Bank Mike Look at paper
USDA change his mind so many times
44-01 121,641.61

B. Guillman
ENTERED OCT 28, 2004
Did a IC to order a $99,000.00 ?
@ FLM-Group. (Paper check)
F/U pull UD for check Date.
PAQ
10-29-2004 pulled UD screen for check date.
- 1st installment of $99,000.00 ?
paper check is dated
Nov. 1st, 2004 -

B. Guillman
ENTERED OCT 29, 2004
Received check from "B" for the $84.00 filing fee to do the UCC-1 with the Dept of State - Check was deposited & forms (UCC) w/ cover ltr (Doc #4) were faxed to DOS (717) 783-2244
F/U for UCC to be filed and the check for closing

B. Guillman 10-29-04
Received $84.00 check to file the UCC with the Dept of State - Faxed to DOS w/ cover ltr.
F/U for copy of filed UCC
11-4-04 - pulled [illegible]

11/17/04 [illegible]

E.V. to B. Form for [illegible] [illegible] [illegible] of loan funds - [illegible] up mtg's signed and [illegible]

O. Quillman ENTERED NOV [illegible] 2004 F/U. - ✓ Forward mtg to Lehigh County Court House Recorder of Deeds for filing.

✓ [illegible] moc (4005) F.V. to [illegible]

✓ Original 440-04 in [illegible].

O. Quillman ENTERED NOV 2 J, 2004

Received $1.00 check for the remaining money left in the B's account before loan closing - Typed up ltr. to send with the check. Requesting her to sign & Date the copy of the letter & return it to our office - that she received this check!

O. Quillman ENTERED NOV [illegible], 2004

Received unfiled Mortgage back from the Lehigh County Recorder of Deeds Office with attached Document requesting $4.00 more to file and they would not accept the notary seal.



 

41-02 and
44-03
8/8/2005
BLB
He gave the Loan Jared
8-16-05
PC to Jared @ UNCB at 717-519-3186
and left a message about
needing the SBA info to set
up BE here in EFT
What This about?
Jared Gave the Loan

United States Department of Agriculture
Farm Production and Conservation
Farm Service Agency
1238 County Welfare Road
Suite 240
Leesport, PA 19533-9710
(610) 478-7158 Ext 2
(855) 822-1791 Fax

**February 23, 2018** **4-FLP, Exhibit 25.4**

## 60-DAY ANNUAL INSTALLMENT AND PAYMENT DUE REMINDER LETTER

**CATHLEEN R. WISSER**
**LARRY L. WISSER**
**8149 BAUSCH RD**
**NEW TRIPOLI, PA 18066**

According to Farm Service Agency (FSA) records, you have agreed to make annual installments on your loans. This is a reminder that you have loans with payments due within 60 days. If you have other loans with annual installments due on other dates, you will be notified by another letter as they come due.

The following loans have payments coming due:

| 1. Loan Number | 2. Loan Date | 3. Amount of Loan | 4. Installment Due Date | 5. Installment Amount | 6. Payment Amount Due |
|---|---|---|---|---|---|
| 44-12 | 4/18/2012 | $23,774.94 | 4/18/2018 | $2,693.00 | $2,693.00 |
| ?, 41-13 4/4/18 | 4/18/2012 | $20,3357.96 | 4/18/2018 | $12,288.00 | $11,558.00 |
| 44-14 | 4/18/2012 | $34,545.09 | 4/18/2018 | $3,913.00 | $3,913.00 |
| 44-15 | 4/18/2012 | $121,641.61 | 4/18/2018 | $13,777.00 | $13,777.00 |
| 44-16 | 4/18/2012 | $80,000.37 | 4/18/2018 | $8,860.00 | $4,359.00 |

**NOTE: This reminder does not include any cost items that may have been incurred on your loans. Cost items are immediately due and payable.**

**Please continue to submit payments through your local FSA office. If your payment due has already been submitted through a payment or assignment, please disregard this notice. You may call 1-888-518-4983 in order to check the** current status of your account. For more information or if you have any questions, please contact ***USDA, Farm Service Agency at 1238 County Welfare Road, Suite 240, Leesport, PA 19533-9710 or call (610) 478-7158 ext. 2.***

| 7A. Authorized Agency Official Name | 7B. Signature | 7C. Title |
|---|---|---|
| **BRUCE K. BROWN** | [signature] | *Farm Loan Manager* |

**Notice to Customers Presenting Checks**
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquiries, please contact your local office.

*Privacy Act* – A privacy Act statement required by 5 U.S.C. §552a (e) (3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index/html), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

USDA is an equal opportunity provider, employer, and lender.



United States Department of Agriculture
Farm and Foreign Agricultural Services
Farm Service Agency
1238 County Welfare Road
Suite 240
Leesport, PA 19533-9710
(610) 478-7158/Ext# 2
(610) 371-8640 Fax

CATHLEEN WISSER
LARRY WISSER
8149 BAUSCH RD
NEW TRIPOLI, PA 18066

July 31, 2013
RD Form Letter 1951-C1
Sent by Certified Mail

**Notice of Intent to Collect by Administrative Offset**

Dear MRS. & MR. WISSER:

The United States Department of Agriculture (USDA), Farm Service Agency (FSA) will use administrative offset to collect a debt owed by you to Farm Service Agency. This notice advises you of your rights concerning administrative offset as given by the Debt Collection Act, 31 USC 3716; the Federal Claims Collection Standards, 4 CFR 101-105; and the USDA administrative offset regulations at 7 CFR part 3, subpart B. Your delinquent debt has been referred to the United States Department of Treasury, Treasury Offset Program, as well as to your local consumer credit reporting bureau, in accordance with the requirements of the Debt Collection Improvement Act of 1996.

Farm Service Agency intends to take any future payment that you are to receive from your participation in any Federal program or contract. We intend to begin administrative offset 30 days after this notice has been delivered to you. These payments will be applied to your delinquent debt in such amount required to bring your account current.

The loans for which payment is past due are as follows: We only got 50 sit down at our table and wrote out

| Loan No. | Note Date | Note Amount | Interest Rate | Amount Due |
|---|---|---|---|---|
| 44-16 | 04/18/2007 | $80,000.37 | 1.250% | $371.00 |

39,000.00
40,000.00
We got for Cows and Bruce walk out with 11,000.00 out of the Wisser house

The amount due will increase as interest accrues at the annual rate indicated above. Also, the debt and the amount required to bring the account current may increase as penalties or fees are charged to your account and subsequent installments become due. The amount to be offset will also include any payments to other entities equal to your pro rata share in the entities if FSA has a legally enforceable right under state law or otherwise to pursue entity payments.

You have the right to review Agency records, to make other arrangements for repaying your debt, and to obtain an Agency review of the basis for the Agency's decision to take administrative offsets, and to request an appeal of this notice to the National Appeals Division:

*Access to Agency Records of the Debt*: You may inspect and copy your Agency file regarding this debt. If you wish to review your Agency file regarding this debt, you must notify this office in writing within 20 days from the date of delivery of this notice. In response, we will notify you regarding a time and place for your review. If you desire copies of any documents, one copy will be provided at our expense.

*Opportunity to Propose a Repayment Agreement*: At any time within 20 days of the date of delivery of this notice, you may present a written agreement to repay the debt as an alternative to administrative offset. Your proposed repayment agreement must document your ability to pay your account current within a short period of time. In the case of a debt to the Farm Service Agency, Forms FSA 2037 and 2038 are attached for your convenience and must be submitted with your proposal. A written repayment plan for bringing the account current may

03/30/2007 - Farm visit w/ Kathy to write out check for cows that she bought → $ [illegible] for farm visit + SBA Draw

Where are 255, 200, 200, 30, 30, 30, 1226 Land 150, 2004 for What 159 VISA Check 150,00 Scott Hauseman

Bruce don't come to the farm to write out checks on all This money Cathleen Wisser

CATHLEEN R. WISSER
LARRY L. WISSER
8149 BAUSCH RD.
NEW TRIPOLI, PA 18066-3814

60-806/313 1 10015028

551

PAY TO THE ORDER OF Norman Hill

DATE 03-31-2007

Seven thousand nine hundred and fifty ——— DOLLARS

$ 7,950.00

UnionNational COMMUNITY BANK

MEMO

⑆031309068⑆ ⑈1001⑈802⑈6⑈ 0551

Where's Bruce paper Work on the 40,00.00 Milk Tank Fraud

Bruce Took are Land presavation 122,615,00, 30 Commenwealth Crove Crop 2,950,00 ever Rec Are FFA Teacher said Bruce isn't to ask you for money, Your sopose to ask him, Goes in are checking account takes all grove ment and lets us 8/1.00 Fraud Bruce says he puts to the Loans What Loans When you pay doubles Tripper on 200,00 Bruce says he buy a Milk tank 40, milk Tank When we buy it Larry & Bru[illegible] Fraud